■ JOAN HUNTER et al., Appellants, v NORMAN ANNEXSTEIN et al., Respondents.—Order of the Supreme Court, New York County (Irma Vidal Santaella, J.), entered on March 24, 1987, which granted the motion by defendant Max Markus Katz and the cross motion by defendant Norman Annexstein to

vacate the court's prior order granting plaintiffs' motion for summary judgment on default and directed the parties to appear for a preliminary conference on a specified date to enable the court to entertain applications and fashion a timetable for resolution of the matter, is unanimously modified on the law, the facts and in the exercise of discretion to the extent of striking the direction that the parties appear for a preliminary conference and otherwise affirmed, without costs or disbursements.

Order of the Supreme Court, New York County (Irma Vidal Santaella, J.), entered on February 5, 1988, which denied plaintiffs' motion for summary judgment against both defendants, granted the cross motion by defendant Max Markus Katz only to the extent of permitting the amendment of the caption to reflect his status as trustee and granting the cross motion by defendant Norman Annexstein only to the extent of directing that all parties appear before the court for a hearing on a specified date with respect to his application for sanctions, is unanimously modified on the law to the extent of granting the motion for summary judgment by plaintiff Joan Hunter as to liability only with the amount of damages to be resolved at an immediate trial and granting the motion for summary judgment by plaintiff Kim Hunter and directing that defendants immediately release to her the trust funds in their possession, along with any interest accrued thereon from December 11, 1984, and otherwise affirmed, without costs or disbursements.

Plaintiff Joan Hunter is the former wife of defendant Norman Annexstein, and plaintiff Kim Hunter is their daughter. Joan Hunter and Annexstein were divorced pursuant to a Florida judgment entered on August 4, 1976. However, prior thereto, Hunter and Annexstein had entered into an oral stipulation, subsequently incorporated by reference in the divorce decree, which was dictated into the record of the Family Court, Queens County, on May 21, 1976 and provided that Joan would receive a total of $100,000 over a period of 10 years for alimony and child support and that Norman would establish a trust fund for Kim in the amount of $20,000 to be paid to her when she attained the age of 21 years on December 11, 1984. The stipulation, moreover, stated that "[a]ll of the forementioned does not depend upon and is not a condition proceeding *[sic]* and upon the remarriage of the petitioner [plaintiff Joan Hunter] and shall survive the remarriage of the petitioner". According to the allegations in the complaint, defendant Annexstein has failed to comply with the terms of

the stipulation by not making the required payments to Joan in the amount of $42,925 and, in addition, Annexstein and the cotrustee, defendant Max Markus Katz, have refused to transfer the trust principal of $20,000 to Kim despite the fact that she has reached the age of 21 years. Thus, plaintiffs seek a money judgment of $42,925, plus interest in favor of Joan and a money judgment of $20,000 plus interest from December 11, 1984 for Kim or, in the alternative, the imposition of a constructive trust for the benefit of Kim and a direction that defendants release the corpus of the trust. Defendant Katz' answer contains general denials, whereas Annexstein's answer consists of general denials and two counterclaims in which he asserts that Joan has already been paid $98,000 in excess of the sum to which she is entitled under their agreement and that $98,000 was wrongfully paid to her because of her remarriage on or about January of 1977 to one Irwin Hunter.

Plaintiffs thereafter moved for summary judgment pursuant to CPLR 3212. When both defendants did not appear on the return date, the motion was granted on default. Defendant Katz then moved, and defendant Annexstein cross-moved, to vacate the defaults, urging that there was a reasonable excuse for their respective defaults and that they possess a meritorious defense to the action. The Supreme Court, in granting the motion and cross motion to vacate, concluded that "it is clear that defendants inadvertently failed to appear and raise meritorious defenses to this action." In that regard, an examination of the record herein indicates that the court appropriately exercised its discretion to relieve defendants of their defaults since it does not seem that either defendant deliberately defaulted in answering. Further, the defaults appear to have been the result of law office failure; the delay involved was not so protracted as to have prejudiced plaintiffs; and defendants have raised a sufficiently meritorious defense to support vacatur of the defaults (see, Picinic v Seatrain Lines, 117 AD2d 504; CPLR 5015 [a] [1]). Although we are persuaded that plaintiffs' motion for summary judgment should have been granted on the merits, the showing necessary to vacate a default judgment is not as strict as that required to defeat a motion for summary judgment. Thus, we agree with the statement of the Appellate Division, Third Department, in Matter of Harley v Assessor of Town of Hoosick (121 AD2d 776, 777), that "respondents' submission of several affidavits of persons having firsthand knowledge of the facts relevant to respondents' various defenses was sufficient as a statement of potentially meritorious defenses to the petition, at least for purposes of opening their default to the motion for summary

judgment and having that motion addressed by Special Term on its merits".

The Supreme Court did consider plaintiffs' motion for summary judgment on the merits and determined that "sufficient factual disputes and questions of law exist to foreclose the grant of relief in favor of plaintiffs without the necessity of a trial." We disagree. In response to Joan Hunter's request for summary judgment, defendant Annexstein contends that his responsibility to make alimony payments was terminated upon her remarriage and that the language at the end of the stipulation that its provisions do not depend, nor are conditioned, upon Joan's remarriage was intended to apply only to his other obligations, such as setting up the trust fund for his daughter and paying for life insurance and medical benefits. As for Kim's entitlement to summary judgment, Annexstein states that there is inadequate proof that the person who is the coplaintiff herein is, in fact, his daughter in that "while I recognize that had Kim lived, she would have become 21 in December, 1984, I have no way of knowing whether or not she in fact did survive until that age, or was mentally competent to receive the trust monies, since I have never heard from her or seen her to confirm that, in fact, she was alive or competent." Defendant Katz, in contrast, states that while he is "more than eager" to turn the trust funds over to Kim, he is unable to do so without the consent and concurrence of the cotrustee, Annexstein.

Contrary to Annexstein's assertion that he was not required to remit further alimony payments to his former wife after her remarriage, the stipulation expressly authorizes that "[a]ll of the forementioned" terms "does not depend upon and is not a condition" of Joan's remarriage and shall survive her remarriage. It is, therefore, difficult to perceive how defendant can construe the foregoing words, which appear clear on their face, to mean that only some, not all, payments mandated by the stipulation survive Joan's remarriage. Indeed, the lack of ambiguity is amply demonstrated by the fact that Joan remarried less than a year after her divorce from Annexstein, and yet he continued to pay her nearly $60,000 in child support and alimony. It is certainly incredible that defendant would have made these payments had he not believed himself bound to do so by the terms of his agreement with Joan. However, although there is no question that defendant, notwithstanding Joan's remarriage, was compelled to pay the full amount specified in the stipulation, he should be accorded an immedi-

ate trial on the issue of damages so that he can prove the full extent of the payments which he has already made.

As for the matter of the trust fund, the claim by Annexstein that Kim may be either dead or incompetent is nothing more than speculation totally unsupported by any factual evidence and, therefore, is entirely inadequate to raise an issue of fact such as would defeat a motion for summary judgment. The law is settled that "one opposing a motion for summary judgment must produce evidentiary proof in admissible form sufficient to require a trial of material questions of fact on which he rests his claim or must demonstrate acceptable excuse for his failure to meet the requirement of tender in admissible form; mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient" *(Zuckerman v City of New York,* 49 NY2d 557, 562). The instant action was commenced by a verified complaint, and this verified pleading that Kim Hunter is who she purports to be "may be utilized as an affidavit whenever the latter is required" (CPLR 105 [t]). In the absence of any evidence that Annexstein's daughter is deceased or incompetent or that plaintiff Kim Hunter is not, in fact, his daughter, summary judgment should have been granted to her. We have considered the parties' other arguments and find them to be without merit. Concur—Sandler, J. P., Milonas, Kassal, Ellerin and Wallach, JJ.